POMPTON STATIONERY CORPORATION, PLAINTIFF-RE-
SPONDENT, v. PASSAIC COUNTY NEWS COMPANY,
INC., DEFENDANT-APPELLANT.

Submitted May 6, 1941—Decided September 27, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and
HEHER.

For the plaintiff-respondent, *Schwartz & Schwartz* (*Louis
Schwartz, Sol Schwartz* and *Isadore Rabinowitz*).

For the defendant-appellant, *Paul Rittenberg* and *A.
Victor Koch.*

The opinion of the court was delivered by

CASE, J.  This is an appeal from a judgment of $16.68
awarded to the plaintiff by the judge of the Second District
Court of the City of Paterson sitting without a jury.  Plain-

tiff is a retail news dealer in Pompton Lakes. It bought the business from John J. Mangus. The state of demand contains the surprising number of 106 counts, of which 36 ground in alleged claims by Mangus for causes that arose before the sale of the business and 70 ground in causes said to have accrued during plaintiff's ownership. The state of demand alleges that defendant is a wholesale distributor and sole distributing agent in plaintiff's territory of the leading eastern newspapers; that defendant unlawfully delivered to Mangus, during his period of ownership, newspapers in excess of his requirements and against his orders, refused to accept the return thereof and by threatening to charge the costs against his standing deposit and to cut off entirely his supply of newspapers put him in duress and wrongfully compelled him to pay charges which he did not properly owe; and that Mangus had assigned to plaintiff all such "sums unduly exacted" from him. The state of demand makes like charges with respect to plaintiff during its period of ownership. The total of the sums alleged to have been paid under duress by Mangus was $54 and by plaintiff $78. A bill of particulars reduced these claims to $10.18 and $6.50, respectively; and the judgment is for the addition of those amounts.

Appellant's points are that the claims of Mangus were personal to him and were not assignable, and that all of the payments made by Mangus and by the plaintiff were voluntary and without duress.

There is authority for considering that an action of this character is not in tort but is an action of contract in the nature of *assumpsit, Chandler* v. *Sanger,* 114 *Mass.* 364, although our study of the state of demand brings us to the conclusion that, notwithstanding a suggestive phrase in one or two of the counts, it does not set up an *indebitatus assumpsit* for money had and received within the purview of *Van Pelt* v. *Schauble,* 68 *N. J. L.* 638. It is settled that duress, to be available as a defense in an action upon contract, must have been exercised upon him who sets it up as a defense. *Travis* v. *Unkart,* 89 *Id.* 571; *Mullin* v. *Leamy,* 80 *Id.* 484; *Hanover Trust Co.* v. *Rizzo,* 110 *Id.* 581. If that statement of the law is to be credited with all of the implications that

flow therefrom, then a claim founded upon duress is not assignable. If such an assignment may not be used as a defense, it ought not, logically, be used in prosecution. We conclude, therefore, that the Mangus claim was not assignable and that plaintiff may not prevail as to it.

There is proof to sustain the finding of the court below, implicit in the award, that the payments in dispute were made under duress; upon this, more presently. The portion of the judgment that relates to the duress practiced upon the plaintiff is $6.50. We have satisfied ourselves as to some of the items therein and having done that are under no constraint to follow every penny thereof to its source. *De minimis non curat lex.* Where there is evidence upon which a District Court judgment may rest this court will not review the decision upon questions of fact. *Marten* v. *Brown,* 80 *N. J. L.* 143; *affirmed,* 81 *Id.* 599; *Peter* v. *Peter,* 114 *Id.* 193.

Involved with that question of fact is the legal question of whether a wholesale news dealer, with a monopoly over the distribution within a given area of all the important newspapers, local and metropolitan, whether published in the English or a foreign language, abuses its monopolistic power when it "pads" the deliveries to a small local retail news dealer so that the latter is obliged to receive and, under the threat, express or implied, that all of his supplies will be shut off, to pay for such a number of papers, beyond his ability to sell and contrary to his express orders, as the wholesaler may elect to send, and whether the wholesaler in so doing puts the retailer under duress. This is not the case of a single newspaper exercising a choice as to whom it will or will not sell. It is more as though all newspaper publications should combine in a conspiracy to achieve an unlawful purpose by coercion upon a retailer. To say that the retailer should be relegated to proceedings for the dissolution of a monopolistic corporation is not a satisfying answer. His business would be gone before such a proceeding was scarcely begun. The daily newspaper does business on a twenty-four hour turnover. The dealer, likewise. His counters must be replenished daily, or he is through. The method which is

here alleged to have been followed was not, if we accept the plaintiff's proofs, an isolated or an unusual occurrence; it was followed day in and day out, through the weeks and the months. It was a *system*. The cases on what constitutes duress were reviewed by Mr. Justice Perskie, speaking for a unanimous Court of Errors and Appeals in *Miller* v. *Eisele*, 111 *N. J. L.* 268, and this rule stated (at *p.* 281):

. "We are constrained by the weight of authority to adopt the view which holds that to constitute duress which in contemplation of the law will recognize as sufficient to make or render a payment of money involuntary there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting payment, from which the party making the payment has no other means of immediate and adequate relief of his person or of his property."

Applying that rule to the instant case, we conclude that the acts stated in putting the last question do, in point of law, sustain a finding of duress.

The error in crediting the Mangus assignment results in a part reversal of the judgment. The items which were allowed by virtue of that assignment, totaling $10.18, will be stricken. The parties concede that the award of $16.68 represented the sum of the figure just mentioned and of $6.50 representing those counts which grounded in the transactions conducted by the plaintiff directly with the defendant. The result of this part reversal will be that judgment will be entered for the plaintiff in the amount of $6.50 damages, plus costs.